THE STATE OF CONNECTICUT vs. ROSIE ENANNO ET AL.

Third Judicial District, New Haven, January Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

In defining to the jury the crime of theft from the person, it is not
necessary for the court to use the word "feloniously," and it is
doubtful if the use of that word would be helpful to the jury,
since it is not clear, but itself requires further definition; but it is
necessary that by the use of some equivalent expression the crim-
inal characteristic of the crime should be pointed out so that the
jury should not fail to distinguish theft from mere conversion.
Accordingly, a charge which fails to show that the taking is without
excuse or color of right, is erroneous.

In the present case the charge was also claimed to have been erroneous
because the court, referring to the State's claim of a conviction of
one or both defendants as accessory to the crime, merely stated
generally that a person aiding or assisting one committing a crime
could be prosecuted jointly with the latter. Held that in view of
the fact that this was a definite and distinct ground of complaint,
such reference was not sufficient, but that the jury should have
been told specifically what it was to be an accessory, and the
meaning of the descriptive words used in the governing statute
(§ 6716) pointing to the necessity of a kind of partnership in pur-
pose and conduct, and the distinction between mere innocent aid
and passive acquiescence, on the one hand, and, on the other, the
required elements of criminality in intent and community of un-
lawful purposes.

The defendants, who were fortune tellers, claimed that in accordance
with ordinary practice their hands were crossed with money, and
the money was afterward returned to the owner; and in referring
to this the court in its charge stated that the dispute was whether
the money got back into the possession of the owner or was re-
tained. Held that this statement was merely a part of the court's
presentation of this claimed defense, and did not justify the de-
fendants' criticism that the matter of intention in taking the
money was treated as immaterial.

It was not error for the court not to explain the meaning of "overt,"
used in connection with "act," for as so used it was not a technical
word, and it is not incumbent upon a court to define words in
ordinary use when used in their ordinary sense.

The accused were jointly charged, in one count, with the crime of theft
from the person, and, in another, with an attempt to commit such

The State v. Enanno.

crime. The court, having charged that the accusations were independent and that each must be separately proved, continued that the jury might, however, allow a finding of guilt as to one count to affect the credibility of the accused as witnesses on the other count. *Held* that since both accused had testified in flat denial of each count, the finding them untruthful on one count might properly lead to a doubt as to their credibility upon another, and the statement by the court was but the sufficiently guarded application of the maxim, *Falsus in uno, falsus in omnibus.*

Submitted on briefs January 21st—decided July 22d, 1921.

INFORMATION charging theft from the person, also an attempt to commit that offense, brought to the Superior Court in New Haven County and tried to the jury before *Keeler, J.;* verdict and judgment of guilty upon each count, and appeal by the accused. *Error and new trial ordered.*

*Walter J. Walsh,* for the appellants (the accused).

*Arnon A. Alling,* State's Attorney, and *Walter M. Pickett,* Assistant State's Attorney, for the appellee (the State).

GAGER, J.   The defendants were jointly charged with the crimes of theft from the person and an attempt to commit the crime of theft from the person, and were convicted by a jury upon both counts. They then filed a motion to have the verdict set aside as against the evidence, which was denied; whereupon a request for a finding was made, and an appeal for errors in the charge was taken. An appeal was also taken from the denial of the motion to set the verdict aside, but this was abandoned upon argument.

At least five of the reasons of appeal are based upon a claimed error of the court in its instruction to the jury in its definition of the crime of theft. Upon this point the court charged as follows:   "Theft or larceny is the

wrongful or fraudulent taking by any person of the per-·
sonal goods or property of another from any place, with
intent to convert them to the taker's own use; that is, to
make the goods or property his own without the consent
of the owner. The intent must be to deprive the owner
permanently of his property by appropriating it to the
use of the taker."

The first count contained the language "feloniously
did steal"; the second count, "did . . . feloniously
attempt to steal." The appellants complain that the
court nowhere told the jury that the accused should not
be convicted unless they took the money in question
with a felonious intent, and that this failure constituted
harmful error, and that this error affected both counts.
The real grievance of the appellants, as expressed in their
argument, seems to be that the court did not incorporate
the very word "felonious" in its explanation of the
crime charged. There was no error in omitting the use
of this particular word. We doubt if its use would have
given the jury any additional light upon the nature of
the act charged. It is true that the word is incorporated
in many definitions of "theft"; for instance, Swift de-
fines "theft" as "the wrongful taking and carrying
away the personal goods of another from his possession,
with a felonious intent to convert them to the use of the
offender without the consent of the owner." 2 Swift's
Digest, p. 309. On the other hand, Wharton, in his
Criminal Law (11th Ed.) Vol. 2, § 1095, after review-
ing various definitions, says: "Larceny may be de-
fined to be the fraudulent taking and carrying away of
a thing without claim of right with the intention of con-
verting it to a use other than that of the owner without
his consent." The term "felonious" always requires
further definition to be of any use to a jury. 2 Wharton,
Criminal Law (11th Ed.) § 1094. As long ago as 1796,
JUDGE SWIFT, in his System, Vol. 2, pp. 384, 385, quoted

with approval by CHIEF JUSTICE ANDREWS in *State* v. *Setter*, 57 Conn. 461, 466, 18 Atl. 783, said of the term "felonious," after referring to the use of the word in the English law: "Nor does it [felony] with precision comprehend any class or description of crimes. A word of such uncertain meaning ought to be banished from a code of laws; for nothing produces greater confusion and perplexity, than the use of terms to which no precise and clear idea can be affixed. . . . The word feloniously is used in indictments for all capital crimes, and for many not capital, as for theft; but as felonious in an indictment, can mean nothing more than criminal, and does not designate the nature or the class of the crime, it may be deemed unnecessary and immaterial, and ought to be exploded by our courts."

As we have seen, the term is still retained by many authors and judges as an essential part of the definition, but other definitions have been framed which omit the use of the word "felonious" and may be preferred as being clearer upon their face than those based on the use of the word "felonious." See Wharton's definition, *supra.*

Technically, however, the word "felonious" used in many definitions, some of which may be found collected in Bishop's New Criminal Law, Vol. 2, §§ 758 and 759 and the note, serves to indicate the nature of the criminality of the act; and a good definition must in some way—either by the use of the word "felonious" properly explained, or by the substitute of the explanation itself, or some equivalent phrase—point out this criminal characteristic. The learned trial judge, apparently, was intending to follow the language of Parke, B., as cited in 2 Bishop, *supra*, note 8 to § 758, but inadvertently omitted the words which state the necessary criminal characteristic in the definition used. The words "without excuse or color of right" do not occur, and we

find nothing in the charge before us which supplies the omission of these words from the formal definition, while they are found in the definition as quoted from Parke, B., although in Parke's definition the word "felonious" is entirely omitted. "Felonious," in the definition of theft, is held to mean the same as the words omitted from the charge before us, to wit, that there is no color of right or excuse for the act.

The appellants claim that under the definition as given, with the word "felonious" or its explanation, as stated above, omitted, the accused could have been convicted had the act in fact been simple conversion. The case required no very extended explanation of the idea contained in "felonious," but we think, even without a request, the defendants were entitled to sufficient definiteness as to the nature of the criminality to remove all reasonable chances that the jury might fail to catch the distinction between conversion and theft. The failure to incorporate this important element in the definition was error.

The charge is also criticized for this passage: "The attorney for the State who opened this case brought to your attention the fact that where one person aids or assists another in any way in committing a crime, that that person so aiding and assisting, and called in the language of the law an accessory, may under our statute be prosecuted jointly with the other person connected with the alleged crime in the same way as if he or she had actually and physically committed the offense charged."

The claim of error was made here, because the court was not specific in not negativing the possibility of innocent aid, and says that one could have been convicted under this charge on simple presence. We think this part of the case, based on the statute as to accessories, was not explained as it should have been. As

the charge is read, one gets the impression that this quotation is merely a passing reference to a matter brought to their attention by the State's Attorney, requiring only an allusion. It was more than that; it was a definite and distinct ground of complaint against one, and possibly both, of the accused. The jury should have been told specifically what it was to be an accessory, what was necessary, and what kind of conduct must be shown to bring one who did not physically commit the crime under the same punishment as one who did. The words of the statute (§ 6716) are as follows: "Every person who shall assist, abet, counsel, cause, hire or command another to commit any offense may be prosecuted and punished as if he were the principal offender."

The jury were not given the information that even a reading of the whole statute would have given them. The distinction between mere presence as an inactive companion, passive acquiescence, innocent acts which may in fact have aided the one who was doing physically the act charged, on the one hand, and, on the other, criminality in intent and community of unlawful purposes and actions, the meaning of the terms "aiding" and "abetting," and the other descriptive words used in the statute pointing to the necessity of what we may call a sort of partnership in purpose and conduct,— these matters, and perhaps others, according to the circumstances of the particular case, should have been called to the attention of the jury when they were called upon to determine whether one should be convicted under the statute quoted; otherwise very serious errors in result might be reached. *State* v. *Scott,* 80 Conn. 317, 68 Atl. 258; 16 Corpus Juris, p. 125, § 112 *et seq.* There was error, also, in this part of the charge.

The court also used this language. "Now, it also appears to be admitted that there was some money got

into the hands of the younger one of these women, and the dispute is whether it got back into the possession of Mr. Hart, or whether some of it was retained by the person who took it." And counsel for the defense says it would seem from this language that the matter of intention in taking the money was immaterial, but the question was whether it got back into Mr. Hart's hands without regard to any criminal element in its transfer into the hands of either of the accused. Taking the charge as a whole, we do not think that is the proper construction. An examination of the charge shows that this statement is but the preliminary to calling the attention of the jury to a claim of the defense, both that there was no attempt to steal and that nothing was in fact stolen, for the court immediately goes on to say: "Now, the claim of the defense on this head is, that, while it may be true that the production of money was desired, that this was a part of the regular procedure of fortune tellers, not only that their palm should be crossed with some coin, but that some bills should be placed in their possession whereby certain occult powers of divination that they have might be awakened or strengthened, or perhaps that the matter might be more significant in the eyes of the party whose fortune was to be told. In other words, that they were simply going through the ordinary rigmarole which is employed by gypsies when they are telling fortunes, and that there not only was no intent to steal anything away from the person of Mr. Hart, but also there was nothing in fact stolen, and on this account that is a matter for you to determine." We do not think the reference, in this part of the charge complained of, is of very much importance, but its use was to further the presentation by the court of the claimed defense of the accused.

There was no error in not explaining the meaning of

"overt." It is not in this connection a technical word. It is not incumbent upon a court to define words in ordinary use when used in their ordinary sense. But the court here did all that could be asked when, after referring to intent, it went on: "also, as I have said, there must be one or more overt acts in furtherance of the intent, and this overt act must go further than merely to make preparation in a general way; the accused must do something, some act, directly tending to carry out his unlawful intent."

But one other claim should be noticed. The court was referring to the fact of two counts, and said: "I want to say to you, gentlemen, right at this point, that these accusations are entirely independent, and to say, as requested by the counsel for the defense, that you should not throw the influence of the proof of one over into proof of the other offense. That is, that each one of them stands on its own merits, and you are not to convict for both because you possibly may be satisfied that the accused is guilty beyond a reasonable doubt of one of them. But of course, gentlemen, if you find the accused guilty on one of these counts from the evidence on that count, it might naturally have some effect on your mind on the credibility of the witnesses, and that effect is of course an honest one and one which you might carry into the consideration of any other undertaking in which it is alleged that they were engaged." The accused claims this was unfair and improper, because it was practically a charge to the jury that if they found the accused guilty on one count, it would affect their credibility as to their testimony concerning the other.

Both the accused had testified in flat denial of each count, and denied they ever had any of Hart's money in their possession under the first count, and that they ever had any dealings with Roraback under the second

count, or had ever seen him until they saw him in court. The finding them untruthful on one count might properly lead to a doubt as to their credibility upon another, and the statement by the court was but the sufficiently guarded application of the maxim, *Falsus in uno, falsus in omnibus.* *Dubuque* v. *Coman,* 64 Conn. 475, 30 Atl. 777; 2 Wigmore on Evidence, § 1008 *et seq.*

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.