STATE OF CONNECTICUT *v.* FREDERICK J. DUFRESNE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CR 13-5585

Argued February 7—decided March 18, 1966

*Charles B. Alaimo,* of Thompsonville, for the appellant (defendant).

*Seymour A. Rothenberg,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J.  The information was in one count charging the defendant with a breach of the peace in violation of § 53-174 of the General Statutes. No bill of particulars was requested and none was filed. The information was in the short form (Practice Book § 493), and its validity or sufficiency was not challenged. It set forth the crime charged, the date, and the place where it was alleged to have been committed, and made reference to the statute in

question. Thus it was in substantial compliance with the rules. *State* v. *Davis,* 141 Conn. 319, 320. In effect, the information charges that the offense alleged was committed by any means within the intendment of the statute that the state might prove in the trial. *State* v. *Mele,* 140 Conn. 398, 402.

The defendant was found guilty after a trial to the court, sitting without a jury, and has appealed, expressly waiving his right to a finding of facts. The sole assignment of error is that the court erred in concluding that upon all the evidence the defendant was guilty of the crime alleged beyond a reasonable doubt, "for the reason that there was no evidence presented to show that the defendant, Frederick Dufresne, was engaged in any act prohibited by the Statute he was charged with having violated." Upon such an assignment of error, "we determine from the entire evidence whether the court erred in holding that guilt was established by the requisite degree of proof." *State* v. *Pundy,* 147 Conn. 7, 8.

The court could reasonably have found the following facts: On July 4, 1965, the defendant and Comparetto, both of whom lived in the town of Enfield, went to Suffield looking for Sam Bromage. Comparetto did not know Bromage and had not seen him before that day, but Bromage was known to the defendant. The trip was made by an automobile owned and driven by the defendant. At first the pair went to Bromage's home; there they were informed that Bromage had gone to the golf course where he was a caddy. After that, they proceeded to the golf course and drove on Main Street, where they saw two boys walking in the same direction the car was traveling. As they drew up, the defendant stopped the car behind the pair in order to identify Bromage. Comparetto then blew the horn and

shouted, "Sam." One of the boys turned around and, on seeing his face, the two in the car knew it was the person they were looking for. Comparetto then got out of the car and walked over to Bromage. Thereupon an argument ensued. Later, the defendant got out and joined the group. Comparetto struck Bromage, who then started to walk away, stating that he was not going to fight. Thereupon Comparetto seized him and beat him up so severely that his nose was broken, his face was bloodied, and his injuries required hospital and medical attention. Meanwhile, the boy with Bromage started off to call the police and the defendant chased him for several hundred feet, yelling not to get the police, but the boy eluded him. Shortly thereafter, and during the progress of the assault, a woman living in the neighborhood said she would summon the police, whereupon the defendant drove off with Comparetto in the defendant's car. When they left, Bromage was lying semiconscious on the ground as a result of the battery of which he was the victim.

From this account of the facts, the court could justifiably conclude that the attack on Bromage was unprovoked, unjustified and inexcusable; that the defendant acted in concert with Comparetto, to whom Bromage was a complete stranger, and that the defendant was guilty as charged. It is not the law, where there is such concert of purpose and action, that only the one who uttered the threat or delivered the blow is liable to prosecution. Each is equally guilty. See *Keane* v. *Main,* 83 Conn. 200, 203; *Caprio* v. *Perugini,* 4 Conn. Sup. 312, 313. In its presentence comments, the court correctly indicated that the defendant and Comparetto (who had pleaded guilty, testified on trial and was sentenced) had taken it upon themselves to "resort to jungle war" to assuage some real or fancied affront to the defendant and that the defendant,

who lacked daring to handle the matter himself, had acted as the persuader and finger man for his muscleman, Comparetto. That, the court said, "is the beginning of gangsterism."

What Svengalian influence the defendant had over his accomplice, or what inducement the defendant exerted for the infliction of a vicious and sanguinary attack by Comparetto upon one completely unknown to him, or what misguided notion of vengeance prompted the assault and battery, we need not make the subject of our judicial inquiry. The facts speak for themselves. "Everyone is a party to an offense who actually commits the offense or does some act which forms . . . part thereof, or directly or indirectly counsels or procures any person to commit the offense or do any act forming a part thereof. *State* v. *Scott,* 80 Conn. 317, 323 . . . ; *State* v. *Thomas,* 105 Conn. 757, 763 . . . ." *State* v. *Pundy,* 147 Conn. 7, 11. No person, in defiance of the orderly process of justice, can take the law into his own hands and seek satisfaction by a reliance on a pseudotalionic retribution.

There is no error.

In this opinion DEARINGTON and JACOBS, Js., concurred.