STATE OF CONNECTICUT *v.* WALTER T. LAFFIN

ALCORN, HOUSE, COTTER, THIM and COVELLO, Js.

Argued October 5—decided November 9, 1967

*Frank J. Mongillo, Jr.*, with whom, on the brief, was *David E. FitzGerald, Jr.*, for the appellant (defendant).

*George R. Tiernan*, state's attorney, for the appellee (state).

COVELLO, J. The defendant, Walter T. Laffin, was charged with the crime of aggravated assault and was tried by a jury, which returned a verdict of guilty. The court denied the defendant's motion to set aside the verdict, and from the judgment rendered on the verdict the defendant appealed. The sole assignment of error is the court's denial of the motion. This claim is tested by the evidence printed in the appendices to the briefs. *State* v. *Vars*, 154 Conn. 255, 258, 224 A.2d 744.

An examination of the evidence printed in the appendices to the briefs disclosed that the jury

could reasonably have found the following facts: On June 2, 1965, Patrick F. Hedge and David W. O'Keefe, patrolmen of the Connecticut state police, were driving on the Connecticut Turnpike in the vicinity of interchange 59 in Guilford when they observed a vehicle parked just off the traveled portion of the eastbound lanes. On stopping, they learned that the vehicle had a flat tire. The operator of the vehicle, Mrs. Irma Y. Schoner, requested Hedge to call Walt's Garage for assistance. After the call was completed, the police officers departed in an easterly direction and continued to a nearby toll booth where they turned around and proceeded westerly. As they were again approaching the disabled car, Hedge observed a service truck enter the westbound roadway at interchange 59 and thereafter make a U-turn, crossing the median divider. The police followed. The service truck was operated by a Robert Raymond, who was accompanied by a William Goodale. Thereupon Hedge told Raymond that he observed him cross the median divider and further told him that he was going to issue him a summons for crossing the median divider. While Raymond changed the flat tire, Hedge wrote out the summons. After the flat tire was changed, Mrs. Schoner and Goodale drove away in the car. Raymond remained at the scene while Hedge explained the summons to him. In the meantime, Mrs. Schoner transported Goodale back to Walt's Garage, where they informed the defendant, Walter T. Laffin, that Raymond was getting a ticket. The defendant then conversed with his son, Walter D. Laffin, hereinafter referred to as Donald, and with Goodale, and thereafter the three of them, together with a Francis Spreda, Jr., got into a station wagon, which the defendant operated, and drove off at a

high rate of speed. They proceeded to the scene of Mrs. Schoner's flat tire where the two officers and Raymond still were. When they arrived at the scene, the vehicle stopped, all four doors of the vehicle were then opened, and the four men jumped out. Three of them immediately ran over to the police car, while the fourth, the defendant, first had some conversation with Raymond. The defendant then went to the police car and asked Hedge why he had arrested one of his wrecker drivers. Hedge informed him that Raymond had crossed the median divider. The defendant denied it and declared that he would take the word of his driver rather than that of a state trooper. The defendant then turned away and muttered something in a sarcastic tone. Hedge stepped out of the police car to find out what the defendant had said, whereupon he noticed that the registration plate on the station wagon was hanging loosely and told the defendant that he should get it fixed before he lost it. The defendant replied sarcastically, and Hedge then said he would issue a written warning so the defendant would be sure to fix it. The defendant uttered a profanity, and Hedge asked for his operator's license and vehicle registration. The defendant denied driving the station wagon and twice refused to exhibit or surrender his license to the officer. Thereupon, Hedge informed the defendant that he had no choice but to place him under arrest and reached out to place his hand on the defendant's shoulder. At that time, Donald, the defendant's son, was standing facing the defendant and slightly to the right and rear of Hedge, holding a wrench in his right hand. As Hedge reached out to touch the defendant, Donald struck Hedge on the side of the face near the right eye with the wrench, fracturing the right frontal

bone and rendering him unconscious. O'Keefe then took a blackjack from his pocket and struck Donald over the head, dazing him. When Hedge was struck, Raymond, Goodale and Spreda fled the scene, but the defendant then advanced on O'Keefe swinging his fists. As O'Keefe warded off the attack, Donald also began approaching O'Keefe, who then drew his revolver and held them at bay until he saw Hedge get back on his feet. O'Keefe then holstered his weapon, whereupon the defendant and his son resumed their attack. After some further struggling, the two officers finally subdued them. Throughout the occurrence leading up to the striking of Hedge by Donald, the defendant was hostile, sarcastic and contentious.

The state does not claim that the defendant actually committed the aggravated assault on Hedge. Rather, the state claims that the defendant is chargeable as a principal offender under § 54-196 of the General Statutes, which provides: "Any person who assists, abets, counsels, causes, hires or commands another to commit any offense may be prosecuted and punished as if he were the principal offender."

The question presented in this case is whether the jury could reasonably have concluded upon the evidence that the defendant, in violation of the statute, assisted or abetted Donald in the commission of the aggravated assault on Hedge. In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language. General Statutes § 1-1. One may be an accessory even though not present actively aiding, abetting or being guilty of a positive act in the commission of the offense. Everyone is a party to an offense who actually commits the offense or

does some act which forms part of the offense, or assists in the actual commission of the offense or any act which forms part thereof, or directly or indirectly counsels or procures any person to commit the offense or do any act forming a part thereof. One who is present when a crime is committed but neither assists in its commission nor shares in the criminal intent of its perpetrator cannot be convicted as an accessory. Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it. *State* v. *Pundy,* 147 Conn. 7, 11, 156 A.2d 193; *State* v. *Thomas,* 105 Conn. 757, 762, 136 A. 475; *State* v. *Enanno,* 96 Conn. 420, 425, 114 A. 386.

Whether a person who is present at the commission of a crime aids or abets its commission depends on the circumstances surrounding his presence there and his conduct while there.

It was within the province of the jury to draw reasonable and logical inferences from the facts proven. *State* v. *Pundy,* supra, 12. No explanation was offered as to why the defendant so abruptly left his garage with his son and two other men to go to the scene of the occurrence. From what happened, the jury could reasonably conclude that the defendant went to the scene of the occurrence for the unlawful purpose of obstructing the officers in the execution of their duties. Upon all the evidence presented, together with such inferences as could be reasonably drawn, the jury could reasonably have concluded that the events hereinbefore

described, including the defendant's reaction to Goodale's report on his return to the garage, the defendant's transporting his son and the two other men to the scene, their rushing to the police car on their arrival at the scene, the defendant's conduct and behavior in initiating the discussion with Hedge concerning the summons issued to Raymond, the defendant's refusal to exhibit or surrender his operator's license to Hedge, the striking of Hedge with the wrench, the ensuing struggle between O'Keefe and Hedge on one side and the defendant and his son Donald on the other constituted but a single transaction; that the defendant not only participated in but initiated it; that there existed between the defendant and Donald a community of unlawful purpose; and that the defendant, by his acts, words and conduct, incited, encouraged and thereby abetted Donald in committing the aggravated assault on Hedge.

There is no error.

In this opinion ALCORN, HOUSE and THIM, Js., concurred.

COTTER, J. (dissenting). I disagree with the majority opinion. The aggravated assault was committed by the defendant's son, and the defendant stands convicted of an offense in which he did not participate. The law seems to be correctly stated, but I fail to see how the facts are sufficient to show that the defendant "knowingly and wilfully" "incited" and "encouraged" Donald to commit the aggravated assault. His presence at the scene is not enough unless he knew that his presence would encourage his son to commit the crime. The wrench referred to was a narrow, eight and one-half inch long box wrench and was apparently partially

enclosed in Donald's fist at the time of the aggravated assault, which occurred in a matter of seconds. The evidence was sufficient to establish that the defendant was guilty of an assault beyond a reasonable doubt. There was not sufficient evidence, however, to establish the additional element necessary to a conviction as an accessory to the crime of aggravated assault, that is, evidence that he was, beyond a reasonable doubt, guilty, as such, of "an assault upon another with any deadly or dangerous weapon." General Statutes § 53-16. "One who is present when a crime is committed but neither assists in its commission nor shares in the criminal intent of its perpetrator cannot be convicted as an accessory. 1 Bishop, Criminal Law (9th Ed.) p. 469. Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it. *State* v. *Enanno*, 96 Conn. 420, 425, 114 A. 386. Persons of whom the former may be said are innocent of any wrongdoing, but those as to whom the latter is proved may be convicted as accessories." *State* v. *Pundy*, 147 Conn. 7, 11, 156 A.2d 193. The evidence was not sufficient to establish the defendant's guilt beyond a reasonable doubt. *State* v. *Pambianchi*, 139 Conn. 543, 546, 95 A.2d 695.