[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON STATE'S MOTION TO TRANSFER TO REGULAR CRIMINAL DOCKET
In this proceeding, the court must decide whether the case of David M. should be transferred to the regular criminal docket pursuant to General Statutes 46b-127. That statute reads in pertinent part as follows: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years; . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged."
David was arrested on a warrant issued by Judge Samuel S. Goldstein of the regular criminal docket on May 10, 1991, but thereafter the matter was transferred to the juvenile docket and a petition was filed on May 13, 1991. Count 1 of the petition charges "Criminal Liability for Murder (53a-8/53a-54a): On or about 5/08/91 he [David M.] did aid others who with intent to cause the death of a victim in New Haven, caused the death of a third person in said city."
A hearing was conducted on October 17 and October 31, 1991 at which hearing witnesses[1] testified and documentary evidence[2] was presented. At the hearing, the State was represented by the advocate, Attorney Cathleen Edwards, and David was represented by Attorney Scott M. Maser, a special public defender.
 I.
From the testimonial and documentary evidence, the court finds that the following facts were established.
 A.
The victim, Elvis Crnkovic, was shot in the back and died from a gun shot wound of the chest on May 8, 1991. David M. was born in the City of New York, New York, on June 30, 1975. David therefore, was fifteen years old on the date when the crime charged against him was committed.
 B.
In the early evening of May 8, 1991, at approximately 7:30, a group, including David M., drove to the corner of Winthrop and CT Page 1790 Davenport Avenues in New Haven. [Tr. Oct. 31, 1991, p. 4]. (A short time before this incident, David M. was seen driving the gray car down Winthrop Avenue to the corner of Winthrop and Davenport. [Tr. Oct. 31, 1991, pp. 3, 13, 26; See also, Tr. Oct. 17, 1991, p. 95]). The group came in two cars, a gray car referred to as an old Mazda wagon and a brown car referred to as an old Malibu Classic Chevrolet. The gray car came first and then the brown car behind it. [Tr. Oct. 31, 1991, p. 7]. The gray car turned onto Winthrop and the brown car stayed on Davenport. [Tr. Oct. 17, 1991, p. 78]. David M. was the driver of the gray car with a passenger. [Tr. Oct. 31, 1991, p. 68]. "Puto" was a passenger in the brown car and "Chuito" was the driver of the brown car. [Tr. Oct. 17, 1991, pp. 102-103; Tr. Oct. 31, 1991, pp. 14-15].
At the corner of Winthrop and Davenport, the victim and his brother, Paul Crnkovic, were playing basketball through a hoop on an abandoned store across the street from their home. [Tr. Oct. 17, 1991, p. 73]. The victim and his brother played basketball there almost every day and sometimes more people would join them. [Tr. Oct. 17, 1991, p. 75: Tr. Oct. 31, 1991, p. 18]. The brown car was about nine or ten feet from the basketball players [Tr. Oct. 17, 1991, p. 84] and the gray car was about eleven or twelve feet away from them. [Tr. Oct. 17, 1991, p. 83].
Trouble had previously existed between Paul Crnkovic and David M. for about a year. [Tr. Oct. 17, 1991, pp. 86-87, 101-102]. About two weeks before the May 8 shooting, Paul Crnkovic was assaulted by David M. in front of the courthouse. There had been an incident involving Paul Crnkovic and the Liberty Street gang, of which David M. was a member, involving a shooting in front of a drugstore. [Tr. Oct. 17, 1991, pp. 92-93; Tr. Oct. 31, 1991, p. 75]. Paul Crnkovic had been arrested for shooting at somebody in front of that drugstore and earlier in the day on May 8, 1991, his charges were dropped. [Tr. Oct. 17, 1991, pp. 91-93].
A gun was seen by Paul Crnkovic coming from out of the passenger seat of the brown car [Tr. Oct. 17, 1991, p. 78], and then apparently two shots were fired from the brown car and then the victim screamed. [Tr. Oct. 17, 1991, p. 79]. When the shots started, the two cars were moving very slowly. [Tr. Oct. 17, 1991, p. 81; Tr. Oct. 31, 1991, p. 8]. The victim and his brother than started running down the sidewalk parallel to Davenport away from the Winthrop-Davenport corner toward Kossuth Street. As Paul was running, he was looking back to Winthrop over his left shoulder and shots started coming from the gray car. [Tr. Oct. 17, 1991, pp. 79, 130]. Approximately six, seven, eight or nine shots were fired from both cars in the direction of Paul Crnkovic and the victim. [Tr. Oct. 17, 1991, pp. 80, 96; Tr. Oct. 31, 1991, pp. 8, 11, 16]. The passenger, not David M., was shooting CT Page 1791 out of the gray car. [Tr. Oct. 17, 1991, p. 82]. The two cars left after the shooting. [Tr. Oct 31, 1991, p. 15]. Paul Crnkovic then turned into an alleyway on the side of the first house on the left that was not abandoned. [Tr. Oct. 17, 1991, p. 134]. The victim, who was shot once, was found laying face down on the sidewalk in the vicinity of 268 Davenport Avenue. [Tr. Oct. 17, 1991, p. 10; Tr. Oct. 31, 1991, p. 61]. Apparently the shot that killed the victim came from the brown car. [Tr. Oct. 17, 1991, pp. 138, 156-157; Tr. Oct. 31, 1991, p. 36].
According to the autopsy report, one of the fired bullets entered the right mid-back of the victim and was lodged just beneath the skin on the left side of the body. The death was caused by a medium caliber, full metal jacketed bullet.
 II.
Under General Statutes 53a-54(a), a person commits murder "when, with intent to cause the death of another person, he causes the death of such person or of a third person." The charge placed against David M. of criminal liability for murder means that the State envisions prosecuting him on the regular criminal docket as an accessory to the crime. Accessorial liability exists when "a person, acting with the mental state required for the commission of an offense . . . solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense." General Statutes 53a-8. General Statutes 53a-8 does not define a separate and distinct crime, but only an alternate means by which the crime of murder may be committed. See In re Ralph M., 211 Conn. 289, 301 (1989). To secure a transfer to the regular criminal docket, the State had to establish probable cause for David M.'s intent to aid the shooters in the brown and gray cars and that, in so aiding, David M. intended to commit the crime of murder. Proof of the dual intent is necessary. State v. Foster, 202 Conn. 520, 525 (1987); State v. Fleming, 198 Conn. 255, 271, cert. denied, 475 U.S. 1143,106 S.Ct. 1797,90 L.Ed.2d 342 (1986); State v. Teart, 170 Conn. 332, 335 (1976).
At this juncture, the court is dealing only with probable cause which exists if the facts found are sufficient in themselves to warrant a person of reasonable caution to believe that David M. has committed the crime of which he has been accused. In order to establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. See State v. Corbuzzi,161 Conn. 371, 376 (1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 677,30 L.Ed.2d 664 (1972); State v. Kaplan, 20 Conn. App. 183, 186
(1989). Intent can, of course, be established circumstantially. State v. DeForge, 194 Conn. 392, 399 (1984). More often than not, a party's intention is inferred from his or her statements and actions. State v. Smith, 198 Conn. 147, 154, 155 (1985). From CT Page 1792 the findings of fact, the court concludes that when David M. drove the car during the incident, he had the intent to murder.
Some of the findings in this case are similar to those in In re Ralph M., 211 Conn. 289, 295, 296 (1989), where the court found that there was probable cause to believe that Ralph M. had committed murder by virtue of his being an accessory. In both of these cases, each respondent secured transportation to the site of the crime and was part of a gang that was feuding with (an)other(s) that regularly frequented the place that was the scene of the crime.
The traditional definitions of accessorial liability require that the accessory in some way associate himself with the venture, that he participate in it as something he wishes to bring about and he seek by his action to make the venture succeed. W. LaFave A. Scott, op. cit. Section 6.7(d), p. 146, citing United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938). David M.'s conduct fits into this criteria.
Counsel for the respondent argued that David's driving of the gray car cannot be viewed as aiding the occupants of the brown car, from which the fatal bullet apparently came, but must be considered as an independent act establishing, at best, probable cause for conspiracy to commit murder, which is not a mandatory transferrable offense. See General Statutes 46b-126. Obviously, implicit in the court's findings is that an agreement existed among participants in both cars to drive to that area and kill Paul Crnkovic but also equally implicit in the findings is that David M.'s conduct evidenced more than mere connection with a plan or conspiracy.
 "Whether a person who is present at the commission of a crime aids or abets its commission depends on the circumstances surrounding his presence there and his conduct while there." (emphasis added). State v. Laffin, 155 Conn. 531, 536 (1967).
The court, therefore, cannot agree with counsel's argument and interpretation especially at this junction where the issue of intentionally aiding concerns probabilities rather than sufficiency of evidence to convict.
Additionally, the Connecticut case of State v. Haskins,188 Conn. 432, 465 et seq. (1982), is most helpful. In this case, Officer Bradley responded to an alarm at New Haven Savings Bank. As he approached the bank doors, he noticed a shotgun pointed at his head. As he threw his hands up, he felt an impact on his right arm and right side. He also noticed two black faces in the area of the weapon, but he could not identify them. As he turned CT Page 1793 to run, he felt another impact on the left side. Additional evidence came out that the defendant was in the company of two other men, all firing shots as they were seen exiting the New Haven Savings Bank and that one of the fleeing men turned and fired a pistol at Bradley as he lay on the ground. Officer Bradley was seriously wounded. None of the wounds could be directly traced to the defendant's weapon. The court, nonetheless, upheld the jury verdict that all three men participated in the shooting of Bradley.
The court noted:
 "[If] the evidence, taken in the light most favorable to sustaining the verdict, establishes that Haskins either committed the assaults charged or did some act which forms part of the offenses charged or, assisted in the actual commission of the offenses or any act which forms a part thereof, or directly or indirectly counseled or procurred any persons to commit the offenses or do any act forming a part thereof, then the convictions must stand." Supra at 465.
The court, therefore, finds probable cause that David M. intentionally aided the shooters in the brown and gray cars and that in so aiding, he intended to commit the crime of murder. Elvis Crnkovic may have been an unintended victim but that fact would not exculpate David M. General Statutes 53a-54a(a) refers specifically to the killing of a third person and, in so doing, the statute incorporates the well-established doctrine of transferred intent. See 1 W. LaFave A. Scott, op. cit., Sections 3.11(d), 3.12(d), pp. 385, 399.
 III.
General Statutes 53a-8 provides that the accessory "may be presented as if he were the principal offender." For the purpose of determining criminal liability, there is no practical difference between an accessory and a principal. In re Ralph M.,211 Conn. 289, 299 (1989). Accordingly, the matter of David M. is transferred to the regular criminal docket as required by General Statutes 46b-127.
NARDI RIDDLE, J.