[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPLICATION FOR INJUNCTION
In this application for an injunction under General Statutes Sec. 52-471, Gary J. DeNino seeks to restrain the Wethersfield Country Club ("Club") from enforcing his suspension on August 14, 2000 from membership privileges until May 31, 2001.
Trial was held before this Court on October 11, 12 and 24, 2000 with memoranda of law filed through November 14, 2000.
 -I-
DeNino's suspension was voted at a special meeting of the Club's Board of Governor's ("Board") held on August 14, 2000 which found that on June 30, 2000, DeNino had violated the club constitution by exhibiting "conduct injurious to the good order, peace or interest of the club" toward four women members and subsequently had harassed, in violation of club policy, Michael Bailey, the club's golf professional."
On June 30, 2000, DeNino was playing golf on the club's course with three other men. From the 16th hole, he saw a group of four women on the 17th hole, who had apparently crossed over from the parallel 6th hole. He walked over to confront them, exchanged some unfriendly words and even though they offered to let his group "play through", allegedly made hostile and disparaging remarks to them, including the alleged use of profane language. After completing his round of golf DeNino filed a complaint about the four women with the assistant golf professional, Michael Baily. On the same date, the four women filed a complaint against DeNino.
On July 15, 2000, DeNino had a telephone conversation with Bailey concerning investigation materials relevant to the June 30th incident, which resulted in a second complaint, this one filed by Baily against DeNino for using abusive and profane language to him and calling Baily a liar.
On July 17, the Board of the club held a meeting in which the two complaints against DeNino and a complaint against another member was discussed. The Board decided to discuss the charges at a special meeting to be held on August 1, to which all the parties would be invited and CT Page 2031 notice was sent to DeNino.
On July 25, DeNino made a handwritten request for a continuance because he had planned to be on vacation through August 4th.
On August 1, the Board met, to consider a separate complaint against Mr. P. as well as the request for continuance by DeNino. Because DeNino had filed a complaint against the four women members, and expressed concern for his personal safety and well as that of his mother at whose home he was living and had filed a related complaint with the Wethersfield Police Department, the Board granted his request for continuance to August 14 but suspended DeNino on an interim basis. Earlier at that same meeting, the Board suspended Mr. P. for inappropriate behavior toward an employee.
At the August 14 meeting, with DeNino and his attorney present, the four women and Mr. Baily who had filed complaints against DeNino appeared and testified, but were not subject to cross-examination. DeNino testified and presented two witnesses from his golf foursome, however, neither was close enough to hear the conversation between DeNino and the four women. DeNino's attorney thereafter made a statement to the Board. After the hearing the Board voted 9 to 1 that DeNino had violated the club constitution in his conduct toward the four women and voted 9 to 1 that DeNino had violated the club's anti-harassment policy with respect to Mr. Bailey by his disrespectful remarks.
After a number of unsuccessful motions regarding an appropriate penalty, the Board voted 7 to 3 to suspend DeNino's membership for ten months, until May 31, 2001.
 -II-
DeNino claims that his suspension was illegal on several grounds.
1. That the 7 to 3 vote to suspend him was insufficient because Art. III, Sec. 5 of the club bylaws requires a vote equal to 4/5 of those present at a meeting.
2. The process employed in the hearing and suspension of DeNino was unfair and illegal in that:
 A) Mr. Baily's complaint against DeNino could not result in a suspension because Baily was an employee not a member. CT Page 2032
 B) The Board failed to follow Roberts Rules of Order in voting the suspension.
 C) DeNino was not permitted to cross-examine the complaining witnesses or have the Board meeting transcribed.
 D) The Board members were biased against him as shown by the first suspension vote at the August 1 meeting, and those voting to suspend him at that meeting failed to recuse themselves at the August 14 meeting.
 E) DeNino was not informed in writing of the exact charges against him.
 F) The 7 to 3 vote did not even constitute a 2/3 vote because an eleventh board member, Raymond Weizalis, was present so that the vote had to be counted as 7 to 4.
 G) The final motion to suspend him made after a motion to reconsider, was illegal because the motion to reconsider was not made by a member voting with the majority on the prior vote.
These latter claims, in addition to an initial claim of constitutional due process violations, do not warrant serious consideration because they were either abandoned in post trial argument, refuted by the evidence presented at trial or supported by applicable law.
Thus the claim under Roberts Rules was not pursued or any edition of Roberts Rules offered in evidence. The harassment policy adopted by the club and posted conspicuously in the locker room was on its face primarily intended to protect employees and a complaint to the club's president, who presented it at a Board meeting was sufficient. The testimony at trial, including that of a member voting against both suspensions failed to disclose any bias on the part of any Board member; the vote to suspend at the August 1, 2000, meeting, while possibly accompanied by some irregularities, was reasonable as a "cooling off" measure in view of the volatile situation created by the multiple complaints and the apprehensions of violence introduced by DeNino himself. No authority has been offered to support the claim that a member of a private club is entitled to have a stenographic record or to cross-examine witnesses at a suspension hearing. DeNino received copies CT Page 2033 of all the complaints against him as soon as they were available; the written complaint of one of the four complaining women was misplaced or filed late and was made available to DeNino as soon as it was made available to the Board and contained no allegations different from the other complaints.
Testimony at trial made it clear that Weizalis, although present early at the August 14 meeting purposely absented himself before the discussion and the voting and was not an eleventh member present.
In Davenport v. Society of Cincinnati, 46 Conn. Sup. 411 (1999), a case in which an expelled member sought injunctive relief for reasons similar to those claimed by DeNino, Judge Levine considered the requirement of a fair hearing by a private club and disposed of the due process claim concluding "There is no support for the proposition, however, than an expulsion hearing by a nonstock corporation must comport precisely with due process guaranties. What the plaintiff is entitled to . . . is a hearing that is reasonable ibid. p. 441, citing Sterner v. SaugatuckHarbor Yacht Club, Inc., 155 Conn. 531 (1982)." Under Sterner, a hearing on a suspension must be meaningful and the sanction must be reasonable.
On the whole the August 14 meeting at which DeNino was represented by counsel, permitted to testify and have witnesses testify on his behalf, and have his attorney make a summary statement in his behalf was meaningful and cannot be said to be unfair or improper under any of the criteria considered in Sterner or Davenport supra.
 -III-
The more weighty claim made by DeNino is that the 7 to 3 vote of the Board suspending him was insufficient because, although it met the 2/3 vote requirement of the club constitution, it failed to meet the 4/5 requirement of the club's By-laws:
Article X of the club constitution entitled "Expulsions or Suspensions" reads as follows:
 "Any Member may be charged with conduct injurious to the good order, peace or interest of the Club, or at variance with the requirements of its Constitution, By-Laws or rules. Such charge shall be in writing addressed to the Board of Governors and signed by the complaining Member. Upon receipt of such complaint the Board of Governors shall inform the Member charged, in writing, of the nature of the allegations. The Member CT Page 2034 so charged shall, upon such Member's request, be entitled to a hearing before the Board of Governors which shall be conducted in accordance with rules established by said Board to assure a fair impartial review of the complaint. After inquiry, if two-thirds (2/3rds) of the Members of the Board of Governors present at such hearing or meeting shall be satisfied with the truth of the charge and that the same warrants action, they may proceed to suspend such Member for a period not to exceed one (1) year, or to request such Member to resign, or to expel such a Member."
Article III of the club by-laws entitled "Powers and Duties of the Board of Governors" reads as follows:
 "5. To admit, reinstate, suspend or expel a member or grant a leave of absence of exactly one (1) year to a Member in good standing by a four-fifths (4/5ths) vote of those present at the meeting and entitled to vote."
There was evidence that the defendant club's interpretation of the 2/3 vote requirement of the constitution as controlling in the instant case was consistent with its interpretation in other cases involving misconduct of a member. This interpretation cannot be said to be unfair or illogical because the wording of the by-law requiring a 4/5 vote can be read to apply only to the granting of "a leave of absence of exactly one year to a member in good standing." Moreover, the wording of the detailed provision of Article X of the constitution containing the 2/3 vote requirement is clear and unambiguous and deals exclusively with the discipline of members for improper conduct. This interpretation limiting the 4/5 vote requirement to leave of absence situations is strengthened by the absence in the constitution of any other provision concerning the granting of any leave of absence to a member.
General Statutes Sec. 33-1056, which provides that membership in clubs shall be governed by "such rules of . . . expulsion as the by-laws shall provide, is unavailing to make the particular bylaw in this case controlling because the provision of the club constitution which deals with suspensions and expulsions is of higher authority. General Statutes Sec. 33-1002(4) defines "Bylaws" as "the code or codes of rules adopted for the regulation of management of the affairs of the corporation irrespective of the name or names by which such rules are designed." CT Page 2035
 -IV-
Finally, the suspension itself and its duration cannot be said to be an unreasonable sanction considering the fact that this was not the first time DeNino had been charged with conduct unbefitting a member of the club and that he was found guilty of both improper conduct towards the four women members as well as the anti-harassment of staff policy publicly declared and posted by the club. The suspension until May 31, 2001, was commensurate with sanctions imposed by the club against at least one other member facing a similar charge of harassment.
Because the likelihood of DeNino prevailing in this Court on his claim of illegal and unfair hearing and penalty imposed by the Board is, to say the least, minimal, his request for injunction is denied.
Wagner, JTR