STATE OF CONNECTICUT v. ARTHUR DiLORENZO

STATE OF CONNECTICUT v. GEORGE GUICCIONE

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued June 8—decided August 7, 1951

*Sigmund L. Miller*, with whom were *George A. Saden* and *George C. Cravatas*, for the appellants (defendants).

*Lorin W. Willis*, state's attorney, with whom, on the brief, was *Otto J. Saur*, assistant state's attorney, for the appellee (state).

O'SULLIVAN, J. These cases were tried together. They involved the same set of facts and raised identical questions of law. Our discussion will be directed to the appeal taken by DiLorenzo. The outcome of his case will necessarily dispose of the other.

DiLorenzo, hereinafter called the defendant, was presented on an information charging him with the crime of manslaughter in that on April 1, 1950, he "did aid, assist and abet one Steven Pribula and George Guiccione in the unlawful installation and operation of a still for the manufacture of alcohol, located upon premises known and designated as #44 Bridgeport Avenue, in the Town of Shelton, which unlawful acts resulted in the burning of the building located upon said premises, and thereby causing the deaths of Jacqueline Reilly and John M. Kieley." The case was tried to the court. The defendant was found guilty as charged. He has appealed from the judgment.

The facts are not in dispute. On March 20, 1950, the defendant leased the basement and first floor of a wooden building on Bridgeport Avenue, Shelton. Two families were then occupying a tenement on the second floor. After entering into possession of the leased premises, the defendant, together with Steven Pribula and George Guiccione, the other accused, caused a still to be erected in the basement by inexpert workmen. It was constructed crudely and without any supervision by the municipal authorities. The still was equipped with a firebox above which was a 275-gallon tank used for cooking the mash. The still was a dangerous instrumentality to operate in a wooden tenement building and constituted a hazard to life and limb. Pribula was put in active charge of operations. The defendant's subsequent participation in the venture consisted in visiting the premises from time to time and in supplying molasses and other ingredients of the mash. Shortly after midnight on April 1, 1950, fire broke out in the basement and spread rapidly throughout the building. The fire was caused by the ignition of alcohol and vapors leaking from the still. As the result of the conflagration, two young children, Jacqueline Reilly

and John M. Kieley, were burned to death while in their beds on the second floor. The defendant was not on the premises at the time. No permit to manufacture alcohol had been issued to him.

The first claim of the defendant is that it was legally impossible for the court to find him guilty of manslaughter. His argument is this: The unlawful act alleged to have occasioned the deaths of the children was the installation and operation of a still; this act, being unlawful only because he had not obtained a permit to manufacture alcohol, was malum prohibitum; involuntary manslaughter cannot follow from the commission of an act of that nature, at least when, as here, the prohibiting statute was not designed to protect life and limb; and, in any event, the violation of the statute as to the obtaining of a permit was not the proximate cause of the homicides.

The defendant has overlooked the breadth of the allegation of unlawfulness. The information referred to no specific statute; it made no mention of the word "permit"; and it cannot be construed as limiting proof of unlawfulness to the failure to obtain a permit. The allegation was far more comprehensive than the defendant appears to realize. The act was described as "the unlawful installation and operation of a still." This was broad enough to allow proof of any unlawful act performed in connection with the installation and operation, whether it consisted of the violation of the statute requiring the defendant to get a permit before engaging in his proposed venture or the mode or manner in which the still was constructed or operated. If the defendant had so desired, he could have sought, before trial, a clarification of the act or acts forming the basis of the charge. Practice Book § 302. And had the state, in complying with an order passed upon a motion, set forth a violation of the statute and nothing more, its

proof would have been limited to the specific act of unlawfulness charged. *State* v. *Scott*, 80 Conn. 317, 321, 68 A. 258. This, however, was not the case. The defendant proceeded to trial without requesting a bill of particulars and, so far as the record discloses, raised no objection to evidence calculated to establish, in addition to a violation of the permit statute, acts of recklessness in the construction and operation of the still. His attempt upon appeal to limit the effect of the allegations in the information cannot avail. In no wise does this violate the rule that an offense may not be laid in the alternative. *Grasso* v. *Frattolillo*, 111 Conn. 209, 212, 149 A. 838. The defendant was charged with the single crime of manslaughter by his unlawfully causing the deaths of specifically named persons. This style of accusation met the requirements of our rules of practice. Practice Book § 311.

The court concluded that the "manufacture of alcohol and the operation of a still upon the premises . . . was unlawful and constituted an act malum prohibitum" and that this unlawful act directly caused the deaths of the children. If this had been the only ground upon which guilt was predicated, there might be merit to the defendant's claim. The court's finding, however, establishes facts which, quite apart from a violation of the permit statute, render its determination of the defendant's guilt unassailable. As previously pointed out, the information was broad enough to encompass any unlawful act connected with the installation and operation of the still. The court found that it was crudely constructed by inexpert persons; that it was erected without proper supervision; that it was located in a wooden building housing two families; that it was a dangerous instrumentality, constituting a hazard to the life and limb of the tenants; and that it was the direct cause of the fatal fire. These were facts which demon-

strated a wanton and reckless disregard for the safety of others. They were sufficient to establish under the common law that degree of unlawful conduct which, when causing death, will always support the crime of manslaughter. *State* v. *Goetz*, 83 Conn. 437, 441, 76 A. 1000; *State* v. *Campbell*, 82 Conn. 671, 677, 74 A. 927. A finding of guilt based upon this type of unlawful act was fully justified, entirely aside from any statutory violation.

The defendant makes the further claim that a person cannot be an aider or abettor to the crime of involuntary manslaughter, particularly when he was not present during the commission of the unlawful act causing death. We make no effort to formulate a rule to embrace all situations where involuntary manslaughter is involved. We go no further than to hold that one who engages with others in a common purpose to carry on an activity in a reckless manner or with wanton disregard for the safety of others is guilty of involuntary manslaughter, if the death of another is caused thereby, even though he is not present when the homicide occurs. *United States* v. *Van Schaick*, 134 F. 592, 601; *State* v. *Recke*, 311 Mo. 581, 594, 278 S. W. 995; *State* v. *McVay*, 47 R. I. 292, 295, 132 A. 436; see *People* v. *Braune*, 363 Ill. 551, 558, 2 N. E. 2d 839; *Puckett* v. *State*, 144 Neb. 876, 878, 15 N. W. 2d 63; *Black* v. *State*, 103 Ohio St. 434, 441, 133 N. E. 795; *State* v. *Newberg*, 129 Ore. 564, 575, 278 P. 568; *Wade* v. *State*, 174 Tenn. 248, 251, 124 S. W. 2d 710. The defendant was subject to this rule. He was engaged with Pribula and Guiccione in a common enterprise requiring continuing unlawful acts. The still could be operated only at great danger to others. The defendant's absence from the building when it burned could not nullify his reckless purpose in making use of the dangerous instrumentality of the still under the conditions which he knew existed.

The court properly concluded that, though he was an absent abettor, he was guilty of the crime charged.

There is no error.

In this opinion BROWN, C. J., JENNINGS and BALDWIN, Js., concurred; INGLIS, J., dissented.