McKinley Park Homes, Inc. *v.* Commission on Civil Rights of the State of Connecticut

Superior Court  Hartford County  File No. 106389

Memorandum filed November 5, 1956.

*Day, Berry & Howard,* of Hartford, for the plaintiff.

*John J. Bracken,* attorney general, and *Raymond J. Cannon,* assistant attorney general, both of Hartford, for the defendant.

COTTER, J.   This is an appeal from the findings and decision of the commission on civil rights made after a hearing before a panel of three members of a hearing tribunal.   An opinion was rendered in which it was concluded that McKinley Park Homes, Inc., discriminated against one Samuel J. Cullers, because of race.   An order was issued directing McKinley Park Homes, Inc., to cease and desist

forthwith from refusing to rent any apartment located on Dauntless Lane, Hartford, Connecticut, to Samuel J. Cullers.

The complaint was filed with the commission on civil rights by Samuel J. Cullers on April 25, 1955. It recited that on April 18, 1955, Cullers visited the office of the McKinley Park Homes, Inc., to check on an application for an apartment which he had placed approximately a year before. The complainant asked to file a new application. A Mrs. Naass, who was in charge of the office, said that they had no more forms. She, however, typed out a facsimile form which the complainant completed and filed in the office. He was informed that there were no vacancies at the time. This complaint, as filed with the commission and upon which the hearing was held, is taken to concern this episode, which took place on April 18, 1955. The testimony of the complainant in support of this complaint is found in the transcript of testimony taken before the panel on pages 19-37, inclusive.

As to the application which was filed in 1954, there is nothing in the evidence upon which to base a finding that the appellant knew at any time of the race of the applicant. His only contact at that time with the renting office was by telephone or through the mail. He originally called the office and asked for an application which was mailed to him. He mailed it back and his other contacts were by telephone. He called twice on the telephone. It was testified that one of the requirements was that the applicant appear in person before the application would be considered. At no time did he appear in person in connection with this first application of 1954. It would seem, therefore, that the issue raised in this particular matter, as set forth in the complaint, is confined to the dealings which took place

in connection with the application of April 18, 1955. His testimony in connection with this matter reveals the following, upon examination by Attorney Cannon for the commission: "Q.—Why did you file that complaint? A.—Because I did not feel that my application would be honored by the McKinley Park Homes Corporation. My past experience with them led me to believe that they might even tear it up after I left. I was suspicious of the fact that she said she had no more applications after I went in there. I just saw her finishing filling out one for another woman while I was in there. And all of these suspicions tended to make me think that my application would not be given fair consideration." He also stated he was further suspicious "that they might even tear it up after I left."

After the application was filed he never followed it up again. It would appear from the testimony of the complainant that at the time he filed this application on April 18, 1955, he was apprehensive and suspicious from the moment that he asked the girl in the office for an application to rent an apartment. It would seem that the gist of the complaint, in considering all of the evidence introduced, is summarized in the testimony of the complainant when he testified as to what transpired upon the day he asked for and filed his application in person. The case was very well and ably tried on both sides but the great mass of the evidence involves transactions which occurred many weeks and months after the events of April 18, 1955, and April 25, 1955. April 18, 1955, was a Monday and the complainant filed his complaint with the commission on civil rights on the following Monday, April 25, 1955. This gave the McKinley Park Homes, Inc., approximately five business days to act upon the application of the complainant. When no action was forthcoming within that short space of time he immediately filed his

complaint. At that time he states that he had in mind that others had been given a rent within one week from the time they filed their application for it. After the complaint was filed with the commission there was no follow-up upon the part of any of the parties with respect to renting an apartment in this development. The appellant seeks to reverse the decision of the commission on the grounds that there is insufficient evidence to establish discrimination upon their part because the commission has not established the complaint by proof which is "substantial and competent"; that the statute (Cum. Sup. 1955, § 3267d) under which the commission is proceeding, which prevents discrimination on account of race, creed or color in "public housing projects and all other forms of publicly assisted housing," does not apply to McKinley Park Homes, Inc., because they are not publicly assisted housing; that to include the appellant within such a class would be against the constitution of the state of Connecticut and the constitution of the United States in that it impairs the obligations of contract and is an abuse of the due process clause and equal protection clause of the constitutions, and that the term "publicly assisted housing" is too vague and unclear to satisfy the requirement of the due process.

It is fundamental in our civil and criminal law that a person is entitled to have a matter tried upon allegations of a complaint, information, warrant or indictment which succinctly and clearly state or spell out the cause of action or charges upon which the complainant relies. *Lewandoski* v. *Finkel,* 129 Conn. 526, 530; *State* v. *Delmonto,* 110 Conn. 298, 299. The criminal law especially is very solicitous of the rule that a person charged with a crime is entitled to know the specifications and particulars of such a crime with which he is to be charged and upon which he is to be tried and convicted or acquit-

ted. "The function of an information under our practice, as well as of the indictment more commonly used in other jurisdictions, is to charge the person named in it with the commission of a crime the nature of which is therein set forth." *State* v. *Delmonto,* supra, 299. This theory of our law is well stated by *O'Sullivan, J.,* in his dissenting opinion in the case of *State* v. *Genova,* 141 Conn. 565, 572, in which he says: "The defendant had the constitutional right to assume that the information set forth the exact charge for which he was to be tried and upon which he was ultimately to be convicted or discharged. Conn. Const. Art. I § 9; U.S. Const. Amend. VI. Nothing is more elementary in criminal law than that an accused is required to defend only against the charge alleged. *State* v. *Scott,* 80 Conn. 317, 321, 68 A. 258; see *State* v. *DiLorenzo,* 138 Conn. 281, 284, 83 A.2d 479."

Section 7407 (b) of the General Statutes provides, in part: "The findings of the hearing tribunal as to the facts, if supported by substantial and competent evidence, shall be conclusive." The meaning of the words "substantial and competent evidence" has been thoroughly considered and discussed by our court in *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, pp. 542-544, inclusive. The court states that findings cannot be based on a "mere scintilla of evidence" and that such a matter as this concerns intent and motive. From the actions of Mrs. Naass in the office of the appellant on April 18, 1955, we cannot infer an intent and motive upon her part to discriminate against Cullers were we to follow the test set out in the *International Brotherhood* case, supra, 542, viz.: ". . . whether the evidence, fairly and impartially considered, is likely to induce in the minds of men of ordinary intelligence, attentively considering it and using common-sense logic, a reasonable belief that

it is more probable than otherwise that the fact in issue is true." While she took some time to look for forms of application and then typed a facsimile out for the applicant, one might become suspicious but it is difficult to find that such conduct would lead a fair, impartial man of ordinary intelligence, attentively considering it and using common-sense logic, to a reasonable belief that it is more probable than otherwise that she was discriminating rather than seeking to help the applicant in making such an application for housing. The court agrees with the complainant that the situation creates a suspicion. It is suspicious, as Cullers claims, but it does not satisfy the test our court has laid out above. Findings, orders and decisions cannot be based upon suspicions but upon proof in accordance with the test enunciated by our courts.

In view of the decision of this court that there was insufficient evidence upon which to base the findings of the commission and its order, it is unnecessary to discuss the other claims of the appellant.

The issues are found for the appellant. The findings inconsistent with this opinion are ordered revised and the complaint is dismissed. The appeal is allowed.