## STATE OF CONNECTICUT *v.* GORDON LEE FRUEAN II
### (AC 17623)

Schaller, Mihalakos and Stoughton, Js.

---

Argued February 27—officially released May 15, 2001

*Averum J. Sprecher*, special public defender, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom were *John T. Redway*, state's attorney, and, on the brief, *Timothy J. Liston*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Gordon Lee Fruean II, appeals from the judgment of conviction, rendered following a jury trial, of two counts of manslaughter in the first degree in violation of General Statutes § 53a-55.[1] The defendant claims that the trial court improperly

---

[1] General Statutes § 53a-55 (a) provides: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection

failed to instruct the jury on intervening or superseding causation, thereby violating his constitutional right to have the jury instructed on each element of the offense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Janet Griffin, a friend of the defendant, and Gina Coccia, an acquaintance of the defendant, had a romantic relationship for several years in Vermont. Coccia ended the relationship in 1992 and, one year later, moved to Connecticut with Patricia Steller, one of the two victims, while Griffin remained in Vermont.

Griffin visited Middletown, the town in which Coccia resided, with her friend, Natalie Jurgen, on three separate occasions during the fall of 1993. Her purpose in doing so was to gather information about Steller's home and the surrounding area. On November 1, 1993, Griffin rented an automobile that she had reserved, specifically selecting a rental company in New York that did not require credit cards. The defendant drove Griffin and Griffin's daughter to Steller's home in Middletown. Once they arrived at the home, Griffin sent her daughter to the store. Griffin and the defendant then walked to the back of the home. The defendant climbed through the "dog door" from the deck and opened the back door so that Griffin could enter the home. The two waited for Steller to return.

Steller and Ronald King, Steller's nephew, entered the home. Griffin fired an antique gun, which the defendant had supplied to her, at both King and Steller until

(a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

all of the bullets were spent. The victims survived the shooting. Griffin then asked the defendant for help in killing the victims. The defendant responded by handing a knife to Griffin, who in turn proceeded to stab Steller with the knife. The defendant also handed Griffin a lamp, which Griffin used to strike Steller. Griffin returned the gun to the defendant before the two left the home. They drove away from the home and threw the gun and holster into a pond.

Coccia returned to the home approximately two hours after the attack. Upon finding the bodies, she ran from the home to find help and called the Middletown police. One of the first officers on the scene heard the answering machine playing a message that stated that the recorder was full. Police officers seized the tape.

When investigators played the tape, the recording contained the defendant's voice stating, "Do it!" In response to Griffin's request for assistance, the defendant is heard to say, "Here!" Sounds of a struggle are then heard, followed by the sound of an object striking another object. One of the voices on the tape states, "Done," and later, "Not done," which is followed by the sound of an object breaking.

The police questioned the defendant, who gave several statements to the police. His statements reflected varying levels of involvement. The defendant ultimately admitted that he was involved in the killings and that he had helped clean Griffin's car before returning it to the rental company. He accompanied the police to the pond in Middletown, where the police recovered the gun.

At trial, the defendant was charged with two counts of murder as an accessory in violation of General Statutes

§§ 53a-54a (a)[2] and 53a-8[3] and one count of capital felony as an accessory in violation of General Statutes §§ 53a-54b (8)[4] and 53a-8. The defendant testified at his trial, admitting his role in the killings. Medical testimony indicated that the gunshot wounds inflicted on each victim were potentially fatal. The defendant pleaded duress and extreme emotional disturbance as defenses.

The defendant's attorney requested that the court instruct the jury on proximate cause. When the court questioned whether proximate cause was at issue in the case, the defendant's attorney replied that "we think it may be with respect to the handing a knife." The court refused the request to charge, and the defendant took exception to the charge as given. The court noted that it believed "that the state did not allege . . . that the defendant proxima[tely] caused anything." The jury

[2] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] General Statutes § 53a-8 provides in relevant part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

"(b) A person who sells, delivers or provides any firearm . . . to another person to engage in conduct which constitutes an offense knowing or under circumstances in which he should know that such other person intends to use such firearm in such conduct shall be criminally liable for such conduct and shall be prosecuted and punished as if he were the principal offender."

[4] General Statutes § 53a-54b provides in relevant part: "A person is guilty of a capital felony who is convicted of . . . (8) murder of two or more persons at the same time or in the course of a single transaction . . . ."

found the defendant guilty of the lesser offense of manslaughter in the first degree in violation of § 53a-55. The defendant received a sentence of thirty years.

The defendant's sole claim on appeal is that the court improperly instructed the jury on causation. Specifically, the defendant claims that he was entitled to an instruction on proximate cause because the victims already had been mortally wounded at the time that he handed Griffin the knife. We are not persuaded.

Our analysis begins with a well established standard of review. "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Griffin*, 251 Conn. 671, 714, 741 A.2d 913 (1999). "[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Valinski*, 254 Conn. 107, 119–20, 756 A.2d 1250 (2000).

It is well settled that "accessorial liability does not attach unless the defendant has the same degree of criminal intent required to commit the offense as the principal. [T]o establish the guilt of an accused as an accessory for aiding and abetting the criminal act of another the state must prove criminality of intent and community of unlawful purpose. It is not enough that the accused committed acts which may in fact have

aided the committing of the criminal act." (Internal quotation marks omitted.) *State* v. *Wilchinski*, 242 Conn. 211, 233, 700 A.2d 1 (1997). "[A] conviction under § 53a-8 requires proof of a dual intent . . . that the accessory have the intent to aid the principal and that in so aiding he intend to commit the offense with which he is charged." (Internal quotation marks omitted.) *State* v. *Foster*, 202 Conn. 520, 525–26, 522 A.2d 277 (1987). Furthermore, "[t]o be guilty as an accessory one must share the criminal intent and community of unlawful purpose with the perpetrator of the crime and one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it." (Internal quotation marks omitted.) *State* v. *Robertson*, 254 Conn. 739, 783, 760 A.2d 82 (2000).

Section 53a-8 provides that "a person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of the offense, he solicits the other person to commit it, or *aids or agrees or attempts to aid the other person in planning or committing it*, or *(having a legal duty to prevent the crime) fails to make the proper effort to prevent it.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Foster*, supra, 202 Conn. 532.

"[T]o convict one as an accessory for aiding and abetting, the state must prove that the accused had both criminal intent and community of purpose with the principal perpetrator of the crime. General Statutes § 53a-8 requires (1) that the accessory have the intent to aid the principal, and (2) that, in so doing, he have the intent to commit the offense with which he is charged. . . . These two requirements effectively exclude from the statute's purview those whose innocent acts do in fact aid one who commits a crime . . . while still including those who have criminal intent and community of purpose even though not present actively

aiding, abetting or being guilty of a positive act in the commission of an offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Tucker*, 9 Conn. App. 161, 164, 517 A.2d 640 (1986).

Our Supreme Court has approved a jury instruction that provides: "Where it cannot be determined who fired the fatal shot, beyond a reasonable doubt, the element of murder as to who caused the death has not been proved beyond a reasonable doubt. However, persons acting with the mental state required for commission of murder, who intentionally aid one another to engage in . . . such conduct, and cause the death, are accessories to one another, and would be criminally liable for such conduct as accessories to murder." (Internal quotation marks omitted.) *State* v. *Delgado*, 247 Conn. 616, 627, 725 A.2d 306 (1999). Furthermore, "[i]t is of no consequence that the evidence does not clearly establish which of the killings were committed by the defendant and which were done by his accomplice . . . ." *State* v. *Roseboro*, 221 Conn. 430, 437 n.6, 604 A.2d 1286 (1992). Therefore, once the court correctly instructed the jury on accomplice responsibility and intent, it is of little moment whether the potential existed that the knife or lamp did not inflict the fatal blow to the victim.

The defendant's reliance on proximate cause and theories of intervening and superseding causes is misplaced. "The doctrine of intervening cause, which has deep roots in the law of proximate cause, both criminal and civil, has been referred to several times in our case law. . . . It refers to a situation in which the defendant's conduct is a 'but for' cause, or cause in fact, of the victim's injury, but nonetheless some other circumstance subsequently occurs—the source of which may be *an act of the victim, the act of some other person, or some nonhuman force—that does more than supply a concurring or contributing cause of the injury, but*

*is unforeseeable and sufficiently powerful in its effect that it serves to relieve the defendant of criminal responsibility for his conduct. . . .* Thus, the doctrine serves as a dividing line between two closely related factual situations: (1) where two or more acts or forces, one of which was set in motion by the defendant, combine to cause the victim's injuries, in which case the doctrine will not relieve the defendant of criminal responsibility; and (2) where an act or force intervenes in such a way as to relieve a defendant, whose conduct contributed in fact to the victim's injuries, from responsibility, in which case the doctrine will apply." (Citations omitted; emphasis added.) *State* v. *Munoz,* 233 Conn. 106, 124–25, 659 A.2d 683 (1995).[5]

The defendant claims that the court improperly failed to instruct the jury on his theory of proximate cause. "We emphasize that . . . the requirement of language in the jury instructions regarding an efficient, intervening cause is not ironclad. It *arises in those cases in which the evidence could support a finding by the jury that the defendant's conduct was overcome by an efficient, intervening cause, or in which the evidence regarding proximate causation was such that, based on the doctrine of efficient, intervening cause, the jury could have a reasonable doubt about the defendant's guilt.* Thus, in the general run of cases, in which the evidence is susceptible of a finding of only one cause of harm contemplated by the statute, a statement in the jury instruction referring to an efficient, intervening

---

[5] In *State* v. *Munoz,* supra, 233 Conn. 114–15, our Supreme Court found it improper to decline a charge on proximate cause when one theory of the defense was that the defendant fought with the victim but left the victim alive, only to be killed by a third party after the defendant had departed from the scene of the altercation. The court concluded that "the jury instruction . . . was improper because the court did not indicate that, for the defendant to be found guilty, 'the defendant's conduct cannot have been superseded by an efficient, intervening cause that produced' [the victim's] death." Id., 122.

cause might well be unnecessary." (Emphasis added.) Id., 121–22 n.8.

In the present case, the court properly declined the request to charge on proximate cause. Under the facts of this case, the defendant allowed Griffin, known to be armed at the time, entry to the home and stood by as she fired the gun that he had supplied to her. He also handed the knife and lamp to Griffin after she had shot the victims. The recording of the attack established the defendant's substantial involvement in Griffin's execution of the plan, both in the form of encouragement ("Do it!") and assistance ("Here!"). This is not a case in which the defendant claims that another person or force interrupted the chain of causation that led to the victims' demise, indicating the defendant's innocence. See id., 121–22 n.8. Rather, the defendant's claim consists of an assertion that the act of handing the knife to Griffin when the victims already were mortally wounded was a futile act that could not affect the outcome. The instruction as requested misstated and misapplied the concepts of proximate cause and accessory liability and was properly rejected. See *State* v. *Lepri*, 56 Conn. App. 403, 414, 743 A.2d 626 (requested charge properly rejected on basis of potential to confuse jury on applicable law), cert. denied, 253 Conn. 902, 753 A.2d 938 (2000).

The defendant's claim is similar to that raised before this court in *State* v. *Barnett*, 53 Conn. App. 581, 734 A.2d 991, cert. denied, 250 Conn. 918, 738 A.2d 659 (1999). In that case, we concluded that "the defendant was charged with assault against [the victim] as an accessory, and, therefore, the state did not need to prove that the defendant actually caused serious physical injury to [the victim]. It is enough for the state to prove that the defendant, acting with the intent to cause serious injury to [the victim], solicited, requested, commanded, importuned or intentionally aided another per-

son to cause serious physical injury to [the victim] by means of a dangerous weapon." Id., 588. Such is the case here.

We conclude that the evidence before the court was not such as to require a jury instruction on proximate cause. The defendant cannot claim that the factual situation before the court presented a situation in which he could assert the existence of an intervening cause that broke the chain of causation. See *State* v. *Munoz*, supra, 233 Conn. 121–22 n.8. The court, therefore, properly declined to give the defendant's requested instruction to the jury.

The judgment is affirmed.

In this opinion the other judges concurred.